UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARATHON OIL COMPANY                                        CIVIL ACTION

VERSUS                                                              NO. 22-1295

LLOG EXPLORATION COMPANY,                          SECTION "R" (2)
L.L.C.

## ORDER AND REASONS

Before the Court is plaintiff Marathon Oil Company's ("Marathon")
motion for partial summary judgment.[1]   Defendant LLOG Exploration
Company, L.L.C. ("LLOG") opposes the motion.[2]  For the following reasons,
the Court denies the motion.

## I.      BACKGROUND

This case arises out of a separate lawsuit, *Pigeon Land Company, Inc.
v. Shell Oil Co., et al.*, filed in the Sixteenth Judicial District Court for Iberia
Parish, Louisiana.[3]  The plaintiffs in *Pigeon Land* owned property in the
Bayou Pigeon Field in Iberia Parish that they leased to oil and gas companies

---

[1]      R. Doc. 28.
[2]      R. Doc. 31.
[3]      R. Doc. 1 ¶¶ 1-2; R. Doc. 28-1 (*Pigeon Land* Petition).

for exploration and production.[4]   One such company was Marathon's predecessor, Plymouth Oil Company ("Plymouth"), which drilled and operated two wells on the property pursuant to mineral leases and surface agreements.[5]  In 1962, Plymouth conveyed its interests in the property to the Ohio Oil Company ("Ohio"), which changed its name to Marathon that same year.[6]  Marathon ceased operations on the property in 1962 but continued to hold its interests until 1991,[7] at which point Marathon entered into an Assignment and Bill of Sale ("Assignment") with LLOG effective as of January 1, 1991.[8]   Under the Assignment, Marathon conveyed to LLOG several itemized interests in the property, including a 25% working interest in a mineral lease with Lessor Lillian LeBlanc, *et al.*, dated May 6, 1936 ("1936 LeBlanc Lease").[9]

In 2019, the owners of the property filed the *Pigeon Land* lawsuit against Marathon, LLOG, and others for alleged property damage caused by the oil and gas operations.[10]   The *Pigeon Land* plaintiffs asserted liability under legal theories of negligence, strict liability, continuing nuisance,

---

[4]     R. Doc. 28-1 (*Pigeon Land* Petition).
[5]     R. Doc. 28-3 at 2.
[6]     *Id.*
[7]     *Id.*
[8]     R. Doc. 8-1 (Assignment).
[9]     *Id.* at 5-6.
[10]    R. Doc. 28-1 (*Pigeon Land* Petition).

trespass, unjust enrichment, violations of the Louisiana Mineral Code, and breach of lease agreements.[11]  Marathon and LLOG each made unsuccessful demand on the other for defense and indemnity for the claims raised in *Pigeon Land*.[12]  Thereafter, Marathon and LLOG reached separate settlements with the plaintiffs.[13]

Marathon then filed this action seeking contractual indemnification from LLOG for its defense and settlement costs in the *Pigeon Land* lawsuit and a declaratory judgment confirming LLOG's obligations under the Assignment.[14]  In support of its claim, Marathon relies upon the following provision ("LLOG Covenant") in the Assignment:

> [LLOG] covenants and agrees to assume all responsibility for the interest(s) assigned hereby as of [January 1, 1991], and further covenants and agrees to protect, defend, indemnify and save [Marathon] free and harmless from and against any and all costs, expenses, claims, debts, demands, judgments, causes of action, liens or liability of whatsoever kind, character or nature arising out of or incident to or in connection with in any way the making of this Agreement and Bill of Sale or the ownership, operation, use, plugging, abandoning, and/or restoration of the above described land(s), lease(s), well(s), fixtures, equipment or other personal property from and after [January 1, 1991], regardless of whether the liability therefor is based upon some alleged act or omission of [Marathon], of [LLOG], or of some other party.[15]

---

[11]  *Id.*
[12]  R. Doc. 1 at 2; R. Doc. 8 at 17.
[13]  R. Doc. 1 at 2; R. Doc. 8 at 17.
[14]  R. Doc. 1.
[15]  R. Doc. 8-1 ¶ 3 (Assignment).

3

Marathon asserts that, under the LLOG Covenant, LLOG is responsible for Marathon's settlement costs and expenses associated with defending the *Pigeon Land* lawsuit.[16]

In its answer, LLOG filed counterclaims against Marathon for a declaratory judgment regarding Marathon's duty to defend, indemnify, and reimburse LLOG for its costs arising out of the *Pigeon Land* lawsuit.[17]  LLOG also seeks to recover defense costs and indemnity, as well as damages for unjust enrichment, tortious conduct, and breach of contract.[18]  LLOG relies upon the following provision ("Marathon Covenant") in the Assignment in support of its counterclaim:

> [Marathon] covenants and agrees to indemnify and save [LLOG] harmless from all claims, debts, liens (including discharge of all liens) and any liability of whatsoever kind, character or nature that may arise in connection or operations or events occurring before [January 1, 1991], except those expressly assumed by [LLOG].[19]

Marathon now moves for partial summary judgment on LLOG's contractual obligations.[20]  It argues that LLOG is obligated to defend and indemnify Marathon from the claims raised in *Pigeon Land* because they

---

[16]   R. Doc. 1 at 2.

[17]   R. Doc. 8.

[18]   *Id.*

[19]   R. Doc. 8-1 ¶ 4 (Assignment); R. Doc. 31 at 4.

[20]   R. Doc. 28.

arose out of the "ownership, operation, use, plugging, abandoning, and/or restoration" of the interests transferred under the Assignment.[21]   LLOG opposes the motion, contending that the claims against Marathon in *Pigeon Land* pertained to operations and events occurring before the January 1, 1991, effective date of the Assignment and are therefore not covered by the LLOG Covenant.[22]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita*

---

[21]     R. Doc. 28-3.
[22]     R. Doc. 31.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party must put forth evidence that would "entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991) (internal quotation marks omitted)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the

"existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

The parties agree that Louisiana law governs this case. Under Louisiana law, "[t]he language in an indemnity agreement dictates the

obligations of the parties." *Kinsinger v. Taco Tico, Inc.*, 861 So. 2d 669, 671 (La. App. 5 Cir. 2003) (citing *Meloy v. Conoco, Inc.*, 504 So. 2d 833 (La. 1987)).   Courts use the general rules of contract interpretation to construe indemnity provisions.  *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996); *see also Berry v. Orleans Par. Sch. Bd.*, 830 So. 2d 283, 285 (La. 2002) (noting that courts are "guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code").  Contract interpretation "is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045 (2023).   "When the terms of a contract are unambiguous and lead to no absurd consequences, [courts] interpret them as a matter of law."  *Liberty Mut. Ins. Co.*, 89 F.3d at 246; *see also* La. Civ. Code Ann. art. 2046 (2023) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

In contrast, "ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties." *Liberty Mut. Ins. Co.*, 89 F.3d at 246 (citation omitted).  "A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language

used." *Guest House of Slidell v. Hills*, 76 So. 3d 497, 499-500 (La. App. 1 Cir. 2011) (citing *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002)). The determination of whether a contract provision is clear or ambiguous is a question of law. *McCary v. Oceaneering Int'l, Inc.*, 243 So. 3d 613, 616 (La. App. 1 Cir. 2018) (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007)).

In determining whether an indemnitor is obligated to cover an indemnitee's liabilities and costs, the court must strictly construe the indemnity provision "to cover all losses which reasonably appear to have been within [the parties'] contemplation." *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985) (alteration in original) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955-56 (5th Cir. 1984) (internal quotation marks omitted)) (applying Louisiana law); *see also McGill v. Cochran-Sysco Foods*, 818 So. 2d 301, 306 (La. App. 2 Cir. 2002) (citations omitted) ("Agreements to indemnify are strictly construed."). Like other contracts, "it is the terms of the indemnity agreement which govern the obligations of the parties." *Meloy*, 504 So. 2d at 839. The party seeking to enforce the indemnity agreement bears the burden of proof. *McGill*, 818 So. 2d at 306 (citations omitted). "As a general rule, one seeking indemnity for a settlement must show actual liability to recover." *Chevron Oronite Co.,*

*L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 226 (5th Cir. 2020) (quoting *Sullivan v. Franicevich*, 899 So. 2d 602, 609 (La. App. 4 Cir. 2005) (internal quotation marks omitted)).   Louisiana courts recognize an exception to this rule, requiring the indemnitee to "show only potential, rather than actual, liability" when the indemnitee's claim is based on a written contract of indemnity.  *Id.* (quoting *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 1 Cir. 2001) (internal quotation marks omitted)); *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 795 (La. App. 5 Cir. 1989) (citing *Terra Res., Inc. v. Lake Charles Dredging & Towing Inc.*, 695 F.2d 828 (5th Cir. 1983)).

     With these principles in mind, the Court turns to the provision at issue in this motion.  The LLOG Covenant provides that LLOG will defend and indemnify Marathon for liabilities arising out of or incident to the "ownership, operation, use, plugging, abandoning, and/or restoration" of the assigned interests "*from and after*" the January 1, 1991, effective date of the Assignment.[23]   The terms of this provision apply regardless of whether liability is based on some alleged act or omission of Marathon, LLOG, or third party.[24]  Marathon contends that the plain language of this provision requires LLOG to reimburse it for expenses incurred from the settlement of

---

[23]     R. Doc. 8-1 ¶ 3 (Assignment) (emphasis added).
[24]     *Id.*

the *Pigeon Land* lawsuit.  According to Marathon, the claims raised in *Pigeon Land* fall squarely within the LLOG Covenant because they were "*filed after* January 1, 1991,"[25] and relate to the plugging, abandoning, and restoration of the lands and wellbores covered by the 1936 LeBlanc Lease.[26]

While it is uncontested that the *Pigeon Land* lawsuit was filed after January 1, 1991,[27] LLOG contends that the "from and after" language in the LLOG Covenant refers to the date the conduct underlying the claims occurred.[28]  Further, LLOG points to evidence that the claims in the suit arose out of activities by Marathon and its predecessors in interest on the property occurring before January 1, 1991.[29]  For example, LLOG cites the testimony of Jill Niswonger, corporate representative for Marathon, that on August 15, 1958, Plymouth notified Shell Oil Company that it discovered a 4-inch line on the property that was "leaking very badly."[30]  Conversely, Marathon has not pointed to evidence indicating that the liability for which

---

[25]  R. Doc. 28-3 at 4 (emphasis added).  *See also id.* at 2 ("LLOG expressly agreed to defend and indemnify Marathon from 'any and all' claims *raised after* the January 1, 1991 effective date." (emphasis added)); R. Doc. 36 at 6 ("LLOG expressly assumed claims *raised after* 1991." (emphasis added)).

[26]  R. Doc. 28-3 at 2; R. Doc. 36 at 2.

[27]  R. Doc. 31-2 ¶ 6; R. Doc. 38 at 1-2.

[28]  R. Doc. 31 at 4.

[29]  R. Doc. 31 at 5-9.

[30]  R. Doc. 31-6 at 15-16.

it seeks indemnification arose from conduct occurring from and after January 1, 1991.  Marathon instead relies on its reading of the "from and after" language in the LLOG Covenant as covering all claims "filed" or "raised" from and after January 1, 1991.[31]

Despite the parties' conflicting interpretations, the LLOG Covenant is not ambiguous as a matter of law.  *See Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998) ("[A] contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight.").  Here, the LLOG Covenant states that LLOG must indemnify Marathon for claims, causes of action, and liabilities "arising out of" certain events and operations "from and after" January 1, 1991.  Nothing in the text of this provision suggests that LLOG's indemnification duty is triggered by the date on which the claims were filed.  Rather, the "from and after" language explicitly ties the indemnification obligation to claims "arising" from conduct or events that occur from or after January 1, 1991.  *See Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So. 2d 466, 480 (La. App. 1 Cir. 1994) (citing *Ransom v. Camcraft, Inc.*, 580 So. 2d 1073, 1077 (La. App. 4 Cir. 1991)) (noting that contract construction "does not authorize perversion of

---

[31]     R. Doc. 28-3 at 2, 4; R. Doc. 36 at 6.

language or the creation of ambiguity where none exists and does not authorize courts to make a new contract where the language employed expresses the true intent of the parties"); *see also Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 528 (5th Cir. 1995) ("[A] claim arises when the injury producing event takes place, not when the claim is filed." (quoting *Koker v. Armstrong Cork, Inc.,* 804 P.2d 659 (Wash. Ct. App. 1991) (internal quotation marks omitted))).

Additionally, the Fifth Circuit has recognized that under Louisiana law, a contract provision "must be interpreted in light of the other provisions" of the agreement, and "provisions susceptible to different meanings should be interpreted 'to avoid neutralizing or ignoring any of them or treating them as surplusage.'" *Tex. E. Transmission Corp.*, 145 F.3d at 743 (first quoting La. Civ. Code Ann. art. 2050; and then quoting *Lambert v. Md. Cas. Co.*, 418 So. 2d 553, 559-60 (La. 1982)); *see also Dufrene v. Bernstein*, 195 La. 575, 582 (La. 1952) ("[A]ll provisions of a contract should be read together in order to determine the meaning of each provision."). The LLOG Covenant must therefore be interpreted in light of the other provisions of the Assignment, including the Marathon Covenant. The Marathon Covenant provides in relevant part that Marathon shall indemnify LLOG for claims "that may arise

in connection or operations or events *occurring before*" January 1, 1991.[32] The language of this provision unambiguously requires Marathon to indemnify LLOG for conduct that occurred before January 1, 1991, not for claims that were filed before that date.

Both the LLOG Covenant and the Marathon Covenant notably use the term "operations" in relation to the types of activities triggering the respective indemnification duties.[33]  Under Marathon's interpretation of the LLOG Covenant, LLOG is required to indemnify Marathon for claims arising from Marathon's own operations of the assigned interests that occurred before January 1, 1991, as long as the claims are filed after that date.  But the terms of the Marathon Covenant plainly require Marathon to indemnify LLOG against claims based upon the same pre-1991 operations. Harmonizing these two provisions under Marathon's interpretation requires the Marathon Covenant to be read as covering only those claims that were filed before January 1, 1991.  Such a reading is clearly inconsistent with the intent of the parties because, as previously noted, the words of the Marathon Covenant are explicit in its application to claims arising from operations occurring—not filed—before 1991.

---

[32]    R. Doc. 8-1 ¶ 4 (Assignment) (emphasis added).
[33]    *Id.* ¶¶ 3, 4.

Marathon does not offer a reasonable interpretation of the Assignment that would reconcile these two provisions. Instead, Marathon points to the exception to its own indemnification duty under the Marathon Covenant for liabilities "expressly assumed by" LLOG.[34] Marathon contends that this exception refers to LLOG's indemnification duty under the LLOG Covenant.[35] But this argument merely assumes the correctness of Marathon's interpretation of its own covenant, which is contrary to its plain language. And the Marathon interpretation is unreasonable because, to give effect to Marathon's argument, the Court would have to read Marathon's indemnity obligation for claims arising from operations or events occurring before 1991 out of the Assignment. The only reasonable interpretation of the exception is that it applies to paragraph 8 of the Assignment, in which LLOG assumed the obligation to renegotiate the terms of sale of production subject to certain preexisting gas purchase agreements covered by the Natural Gas Policy Act.[36] *See* La. Civ. Code Ann. art. 2049 (2023) ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").

---

[34] R. Doc. 8-1 ¶ 4 (Assignment).

[35] R. Doc. 36 at 5-6.

[36] R. Doc. 8-1 ¶ 8 (Assignment).

The Court thus finds that the parties unambiguously intended for the Marathon Covenant to serve as a temporally reciprocal indemnification provision to the LLOG Covenant.  The only reasonable interpretation of the Assignment is that it allocates liability for claims arising from conduct that occurred before January 1, 1991, to Marathon, and liability for claims arising from conduct that occurred after that date to LLOG.  *See Clovelly Oil Co., L.L.C. v. Midstates Petroleum Co., L.L.C.*, 112 So. 3d 187, 192 (La. 2013) ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").  Based on this interpretation, Marathon has not demonstrated that it is entitled to summary judgment for the full amount it paid to settle the *Pigeon Land* lawsuit.  As noted earlier, LLOG points to evidence indicating that the *Pigeon Land* claims arose out of events and operations by Marathon on the property at issue occurring before January 1, 1991.[37]  Marathon's requested summary judgment must therefore be denied.

LLOG also raises an issue of fact as to whether the Marathon settlement solely involved interests transferred to LLOG under the Assignment.  Marathon contends that the claims raised against it by the *Pigeon Land* plaintiffs relate to the plugging, abandoning, and restoration of

---

[37]    R. Doc. 31 at 5-9.

the lands and wellbores covered by the 1936 LeBlanc Lease.[38]  In support of its claim, Marathon cites an exhibit attached to the *Pigeon Land* plaintiffs' original petition, which identifies twenty-one wells on their property and the defendant oil and gas companies that operated and controlled them from 1939 to 2010.[39]  The plaintiffs listed Marathon in relation to only one of the wells: the Lillian LeBlanc #1 wellbore included in the 1936 LeBlanc Lease.[40] Marathon relies on this to demonstrate that the 1936 LeBlanc Lease and wellbore, which it conveyed to LLOG under the Assignment, were the sole interests at issue in the *Pigeon Land* claims against Marathon.[41]

Although LLOG does not contest that the interest in the 1936 LeBlanc Lease was at issue in *Pigeon Land* lawsuit,[42] or that this interest was conveyed under the Assignment,[43] it points to evidence that the *Pigeon Land* claims against Marathon concerned other wells, agreements, rights of way, and leases not transferred under the Assignment.[44]  Specifically, LLOG points to the *Pigeon Land* plaintiffs' answers to Marathon's interrogatories,

---

[38]   R. Doc. 28-3 at 2; R. Doc. 36 at 2.

[39]   R. Doc. 28-1 at 3, 14-15 (*Pigeon Land* Petition).

[40]   *Id.* at 14-15; R. Doc. 8-1 at 5-6 (Assignment); R. Doc. 28-3 at 5.

[41]   *See* R. Doc. 28-3 at 2, 5; R. Doc. 36 at 2.

[42]   R. Doc. 31-2 ¶ 7 (admitting to paragraph 7 of Marathon's Statement of Undisputed Material Facts, R. Doc. 28-4).

[43]   *Id.* ¶ 2.

[44]   *Id.* ¶2; R. Doc. 31 at 9-10.

which identified a non-exhaustive list of eight mineral leases and right-of-way agreements "pursuant to which [the plaintiffs] claim[ed] that Marathon owes or owed any obligation" to them.[45]  Among the identified agreements, only the 1936 LeBlanc Lease is also listed as one of the itemized interests transferred under the Assignment.[46]  LLOG submits that it had no interest in the other agreements identified by the *Pigeon Land* plaintiffs.[47]  Marathon offers no evidence to the contrary.  Because LLOG has created a material fact issue as to the interests involved in the Marathon settlement, Marathon's motion for summary judgment must be denied.

In summary, Marathon has failed to establish that there are no issues of material fact and that it is entitled to judgment as a matter of law that its settlement with the *Pigeon Land* plaintiff is predicated on conduct or events occurring after January 1, 1991, and interests assigned to LLOG. Accordingly, summary judgment is denied on Marathon's claim that LLOG has a contractual obligation to indemnify it from all of the claims and liabilities arising out of the *Pigeon Land* lawsuit.

## IV.  CONCLUSION

---

[45]   R. Doc. 31-9 at 5-6.

[46]   *See id.*; R. Doc. 8-1 at 5-6 (Assignment).

[47]   R. Doc. 8-1 at 5-6 (Assignment).

Based on the foregoing reasons, Marathon's motion for partial summary judgment is DENIED.


New Orleans, Louisiana, this __13th__ day of July, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE