UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARATHON OIL COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1295** |
| **LLOG EXPLORATION COMPANY, L.L.C.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court is Plaintiff Marathon Oil Company's ("Marathon") motion[1] for reconsideration of the Court's order[2] denying Marathon's motion[3] for partial summary judgment. Defendant LLOG Exploration Company, L.L.C. ("LLOG") opposes[4] the motion for reconsideration, and Marathon filed a reply.[5] For the following reasons, the Court finds that the motion for reconsideration should be **DENIED**.

The Court's Order and Reasons[6] denying Marathon's motion for partial summary judgment recited the relevant facts. Briefly, in 1991, pursuant to an Assignment and Bill of Sale ("Assignment"), Marathon transferred to LLOG certain leasing interests in property in the Bayou Pigeon Field in Iberia Parish.[7] For many years both before and after the Assignment, the property had been leased to oil and gas companies for exploration and production. In 2019, the owners of the property

---

[1] ECF No. 42.
[2] ECF No. 39. Section S of the Court issued the order denying Marathon's motion for partial summary judgment. *Id*. While Marathon's motion for reconsideration of the Section S order was pending, this case was transferred to Section O. ECF No. 52.
[3] ECF No. 28.
[4] ECF No. 48.
[5] ECF No. 51.
[6] ECF No. 39 at 1–5.
[7] ECF No. 8-1.

sued Marathon, LLOG, and others for alleged damage caused by their oil and gas operations (the "*Pigeon Land*" lawsuit).[8] Marathon reached a settlement with the *Pigeon Land* plaintiffs and subsequently filed suit in this Court, where it seeks contractual indemnification from LLOG for its defense and settlement costs in the *Pigeon Land* lawsuit and a declaratory judgment confirming LLOG's indemnity obligations under the Assignment.[9]

Marathon moved for partial summary judgment, arguing that the 1991 Assignment obligated LLOG to indemnify Marathon as to any claims and liabilities arising out of the *Pigeon Land* lawsuit.[10] LLOG opposed, claiming that the Assignment did not obligate LLOG to indemnify Marathon for claims arising from operations on the property before January 1, 1991.[11] According to LLOG, because the claims against Marathon in *Pigeon Land* stemmed from Marathon's operations before that date, Marathon was not entitled to summary judgment.[12]

The Court agreed with LLOG and denied summary judgment.[13] In its Order and Reasons, the Court conducted a thorough analysis of the Assignment's two indemnity covenants. The "LLOG Covenant" provides that:

> [LLOG] covenants and agrees to assume all responsibility for the interest(s) assigned hereby as of [January 1, 1991], and further covenants and agrees to protect, defend, indemnify and save [Marathon] free and harmless from and against any and all costs, expenses, claims, debts, demands, judgments, causes of action, liens or liability of

---

[8] *Pigeon Land Company, Inc. v. Shell Oil Co., et al.* was filed in the Sixteenth Judicial District Court for Iberia Parish, Louisiana on July 22, 2019. ECF No. 28-1.
[9] ECF No. 1.
[10] ECF No. 28.
[11] ECF No. 31.
[12] *Id.*
[13] ECF No. 39.

2

> whatsoever kind, character or nature arising out of or incident to or in connection with in any way the making of this Agreement and Bill of Sale or the ownership, operation, use, plugging, abandoning, and/or restoration of the above described land(s), lease(s), well(s), fixtures, equipment or other personal property from and after [January 1, 1991], regardless of whether the liability therefor is based upon some alleged act or omission of [Marathon], of [LLOG], or of some other party.[14]

The Court found that, under this provision, LLOG is obligated to defend and indemnify Marathon for liabilities arising out of or incident to the "ownership, operation, use, plugging, abandoning, and/or restoration" of the assigned interests *"from and after"* the January 1, 1991 effective date of the Assignment.[15] Juxtaposing the LLOG Covenant, the Court held that the "Marathon Covenant" places a reciprocal obligation on Marathon: "[Marathon] covenants and agrees to indemnify and save [LLOG] harmless from all claims, debts, liens (including discharge of all liens) and any liability of whatsoever kind, character or nature that may arise in connection [sic] or operations or events occurring before [January 1, 1991], except those expressly assumed by [LLOG]."[16] That is, the Marathon Covenant obligates Marathon to indemnify LLOG for claims arising from "operations or events occurring before" January 1, 1991.[17]

In its Order and Reasons,[18] the Court concluded that the parties intended for the Assignment to provide "temporally reciprocal indemnification provision[s]" for Marathon and LLOG.[19] This means that the Assignment allots liability for claims

---

[14] ECF No. 8-1 ¶ 3.
[15] *Id.*
[16] *Id.* ¶ 4.
[17] *Id.*
[18] ECF No. 39.
[19] *Id.* at 16.

3

arising from conduct occurring before 1991 to Marathon, and from 1991 onward to LLOG.[20] The Court found that the "from and after" language in the LLOG Covenant refers unambiguously to the date of the conduct underlying the claims—not, as Marathon argued, the date the claims were "filed" or "raised."[21]

In support of its findings, the Court highlighted the term "operation[s]" as used in both the LLOG Covenant and the Marathon Covenant to describe the types of activities triggering indemnity obligations.[22] In the LLOG Covenant, LLOG agrees to indemnify Marathon from claims arising out of the "operation" of the assigned interests from and after January 1, 1991; reciprocally, the Marathon Covenant requires Marathon to indemnify LLOG from claims that "arise in connection [with] operations" occurring before January 1, 1991. Marathon's summary judgment motion asked the Court to find that LLOG was required to indemnify Marathon from claims arising out of Marathon's operations before January 1, 1991 (so long as the claims were filed after that date). But the Court found that "[s]uch a reading is clearly inconsistent with the intent of the parties because, as previously noted, the words of the Marathon Covenant are explicit in its application to claims arising from operations occurring—not filed—before 1991."[23]

Moreover, the Court found that questions of fact remained as to what interests were actually at issue in the *Pigeon Land* lawsuit.[24] Marathon claimed that one

---

[20] *Id.*
[21] *Id.* at 11–12.
[22] *Id.* at 14.
[23] *Id.*
[24] *Id.* at 17–18.

4

specific lease, the 1936 LeBlanc Lease and wellbore, which Marathon indisputably conveyed to LLOG under the Assignment, was the sole interest at issue in the *Pigeon Land* claims against Marathon.[25] But LLOG pointed to evidence that the *Pigeon Land* claims against Marathon involved other interests that had not been transferred to LLOG under the Assignment.[26] The Court made no factual finding as to what interests were or were not involved in the *Pigeon Land* lawsuit; rather, the Court noted the factual disagreement between the parties as further reason to deny summary judgment.[27]

Marathon now moves[28] under Rule 54(b) for reconsideration of the order denying its motion for partial summary judgment. Rule 54(b) applies to interlocutory orders and permits the district court "to reconsider and reverse its decision for any reason it deems sufficient." *McClendon v. United States*, 892 F.3d 775, 781 (2018) (internal quotations omitted). Because the order does not involve a final judgment, Rule 54(b), rather than Rule 59(e), applies. *See Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020). Setting forth a more flexible standard than Rule 59(e), Rule 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. *McClendon*, 892 F.3d at 775. Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] ECF No. 42.

law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal quotations omitted).

"[R]ulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration." *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, AFL-CIO, Loc. 198*, 495 F. Supp. 3d 392, 396 (M.D. La. 2020). "A motion for reconsideration does not support old arguments that are reconfigured." *Id.* In evaluating a motion to reconsider, "district courts [must] exercise their power under Rule 54(b) sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays—consequences that disserve the interests of justice." *Ha Thi Le v. Lease Fin. Grp., LLC*, No. CV 16-14867, 2017 WL 2911140, at *2 (E.D. La. July 7, 2017) (internal quotations omitted).

Marathon fails to offer substantial reasons warranting reconsideration. Marathon first argues that the Court's prior analysis of the LLOG Covenant ignored a critical phrase at the end of the covenant—namely, that LLOG would indemnify Marathon "regardless of whether the liability therefor is based upon some alleged act or omission of [Marathon], of [LLOG], or of some other party."[29] According to Marathon, this phrase is proof that LLOG must indemnify Marathon from claims arising out of Marathon's *pre-1991* conduct involving its "ownership, operation, use, plugging, abandoning, and/or restoration" of the property. That's because, according to Marathon, the company conveyed all interests in the property as of January 1,

---

[29] ECF No. 42-1 at 6–11.

6

1991, and thus committed no "act or omission" on the property after that date. Marathon concludes, "[i]f the contract actually divided liability for conduct occurring before and after 1991, as this Court has concluded, the parties would have never extended LLOG's obligation [by adding the "regardless" phrase] to include liability based on Marathon's (pre-1991) conduct."[30]

But the "regardless" language does not extend LLOG's obligation to pre-1991 conduct. When read in context of the entire LLOG Covenant, the "regardless" language applies to Marathon's alleged acts or omissions after January 1, 1991. The LLOG Covenant states that LLOG must indemnify Marathon from claims arising out of the operation of the assigned interests from and after January 1, 1991—regardless of any "alleged act or omission" by Marathon. The "regardless" phrase did not override the otherwise explicit language of this covenant, which focuses on post-1991 conduct.[31]

Marathon also argues that, under the LLOG Covenant, LLOG's indemnity obligation is triggered as to all *Pigeon Land* claims that involve the "ownership, operation, use, plugging, abandoning, and/or restoration" of the property, regardless of the timing of the conduct.[32] That is, Marathon argues the date of the conduct

---

[30] ECF No. 51 at 2.

[31] The Court can only speculate as to why the parties included the "regardless" phrase in the LLOG Covenant if, as Marathon contends, it had no business on the property from 1991 onwards. Of course, the phrase refers to an "alleged" act or omission of Marathon. Perhaps the parties were concerned about a meritless "allegation" of fault involving Marathon operations post-1991 (for which LLOG would be on the hook under the LLOG Covenant)? Again, what matters is not the "why"—what matters is whether Marathon is entitled to summary judgment based on its interpretation of the Assignment. It is not.

[32] ECF No. 42-1 at 8.

7

doesn't matter if liability stems from one of the defined categories.[33] This argument is based in part on its reading of the Marathon Covenant, which provides that Marathon owes an indemnification duty for conduct pre-dating the effective date of the Assignment, except for those liabilities "expressly assumed" by LLOG.[34] Marathon posits that this exception for "expressly assumed" liabilities refers to the specific liability categories in the LLOG Covenant, namely, claims involving "ownership, operation, use, plugging, abandoning, and/or restoration."[35]

This argument fails to persuade. As previously noted by the Court, the term "operation[s]" is not unique to the LLOG Covenant. That term is also used in the Marathon Covenant: Marathon agrees to indemnify all claims "that may arise in connection [with] operations or events occurring before [January 1, 1991], except those expressly assumed by [LLOG]." By its plain language, this covenant requires Marathon to indemnify LLOG for claims arising out of pre-1991 operations. Harmonizing the two covenants, Marathon covers claims arising out of pre-1991 operations, and LLOG covers claims arising out of post-1991 operations.

Yet, Marathon argues that a claim arising out of oil and gas "operations" pre-1991 triggers the LLOG Covenant, and somehow not the Marathon Covenant. Marathon bases this argument on the "expressly assumed" phrase, claiming that LLOG expressly assumed indemnity obligations for claims stemming from "operations" both before and after 1991. But Marathon does not explain why the term

---

[33] *Id.*
[34] *Id.* at 9.
[35] ECF No. 8-1 ¶ 3.

8

"operations" within Marathon's own covenant should be ignored. Rather, Marathon assumes that the LLOG Covenant, obligating LLOG for claims arising out of "operation[s]," overrides the Marathon Covenant, even though the Marathon Covenant places a similar obligation on Marathon for claims arising out of "operations." Neither covenant takes precedence over the other. The "expressly assumed" phrase has no clear reference point within the Assignment, and it is unreasonable to read the phrase as expanding LLOG's obligations under the LLOG Covenant when the plain language of the Marathon Covenant expressly asserts otherwise.[36] To permit Marathon's interpretation would be to countenance the "absurd consequences" that must be avoided in interpreting contracts. *See* LA. CIV. CODE ANN. art. 2046 (2023) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). The more straightforward interpretation of the dueling covenants is that they make reciprocal obligations based on the timing of the conduct giving rise to the claims.

Marathon would rather ignore entirely the "from and after" language in the LLOG Covenant—or at least have the Court find that the relevant timing is when the claim was filed, not when the conduct occurred.[37] But had the parties intended the claim "file" date to dictate who indemnifies whom, the covenants could have easily

---

[36] As the Court noted in its Order and Reasons, the only reasonable interpretation of the exception is that it applies to paragraph 8 of the Assignment, in which LLOG assumed the obligation to renegotiate the terms of sale of production subject to certain preexisting gas purchase agreements covered by the Natural Gas Policy Act. ECF No. 39 at 15.

[37] ECF No. 28-1 at 4.

9

said so. Nothing in the text suggests that LLOG's indemnification duty is triggered by the date on which the claims were filed.

However, Marathon asks the Court to accept a reading of the LLOG Covenant that effectively ignores its sentence structure. To paraphrase the obligation under the LLOG Covenant, LLOG must indemnify Marathon against all claims arising out of the ownership, operation or use of the property "from and after [January 1, 1991]."[38] Importantly, in the LLOG Covenant, the temporal condition "from and after [January 1, 1991]" is placed adjacent to and modifies the phrase "arising out of [the operation of the land]." It does not follow the series that includes the word "claims." That is, the sentence does not read that LLOG must indemnify Marathon against all claims "from and after [January 1, 1991]" arising out of the ownership, operation or use of the property. Had it done so, Marathon's interpretation may be reasonable. *See* William Strunk Jr. & E.B. White, *The Elements of Style* 30 (4th ed. 2000) ("Modifiers should come, if possible, next to the word they modify."). As it stands, however, the provisions' language on timing is clear—the parties intended the dates of the conduct, not the date a claim was filed, to determine indemnity obligations.

Finally, Marathon claims that the Court should have confined its analysis to whether LLOG's indemnification duty was triggered by the *Pigeon Land* lawsuit.[39] Specifically, Marathon avers that the Court went beyond the narrow legal question posed by its summary judgment motion in finding (1) that "Marathon has not demonstrated that it is entitled to . . . the full amount it paid to settle the *Pigeon*

---

[38] ECF No. 8-1 ¶ 3.
[39] ECF No. 42-1 at 11–13.

*Land* lawsuit"; and (2) that "LLOG has created a material fact issue as to the interests involved in the Marathon settlement."[40] But the Court strains to see how its previous findings went beyond the pale. Marathon's summary judgment motion called for the Court to determine whether LLOG was obligated to indemnify Marathon for "any costs, expenses, claims, demands, or liability arising out of the *Pigeon Land* lawsuit."[41] The Court's finding that Marathon is not entitled to summary judgment as to the full amount paid to settle the lawsuit directly answers that question. Moreover, Marathon argues that "whether Marathon settled liability outside the scope of the 1991 contract is not presently before this Court."[42] On the contrary, Marathon moved for summary judgment for "any costs, expenses, claims, demands, or liability arising out of the *Pigeon Land* lawsuit."[43] Certainly, if Marathon's settlement of the *Pigeon Land* lawsuit involved interests that were not conveyed to LLOG through the 1991 Assignment, as LLOG has contended, then that naturally raises a genuine issue of fact as to LLOG's obligation to indemnify Marathon for "any costs" associated with the *Pigeon Land* settlement. These determinations fall squarely within the question presented by the motion for summary judgment, and were thus not immaterial to the Court's finding. To be sure, by this Order, the Court makes no finding as to what Marathon is entitled to recover in this lawsuit,[44] other than the determination that any such recovery is not warranted on summary

---

[40] *Id.* at 4.
[41] ECF No. 28 at 2.
[42] ECF No. 42-1 at 13.
[43] ECF No. 28 at 2.
[44] See ECF No. 42-1 at 1–2.

judgment.

Accordingly, Marathon has failed to convince the Court that reconsideration of its July 13, 2023 order is proper. For these reasons, Marathon's motion[45] for reconsideration is **DENIED**.

New Orleans, Louisiana, this 20th day of March, 2025.

                                                           _____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[45] ECF No. 42.